MALTUS & WARE *et al. v.* UNITED STATES (No. 1722).[1]

1. CONSTRUCTION, CONTEXT AS AID TO—PARAGRAPH 210, TARIFF ACT OF 1913.

The enacting clause of paragraph 210, tariff act of 1913, provides for begonia, Iris Kaempferri, canna, and dahlia bulbs. Such types of plant life are not true bulbs. The term bulbs, as used in the proviso, can not be given a meaning different from that which it has in the enacting clause, and from that it follows that the designation bulbs as used in the proviso is broad enough to cover plant growths which, though not true bulbs botanically speaking, are nevertheless either popularly or commercially known as bulbs.

2. CONSTRUCTION, PARAGRAPH 210, TARIFF ACT OF 1913—"MATURE MOTHER FLOWERING BULBS."

A "mature mother flowering bulb" is a bulb which has reached its full development and has no function to perform save that of throwing out other bulbs, which, under normal conditions, will flower and in their turn develop daughter bulbs.

3. CONSTRUCTION, PARAGRAPH 210, TARIFF ACT OF 1913—"IMPORTED EXCLUSIVELY FOR PROPAGATING PURPOSES."

When Congress limited the proviso of paragraph 210 to "bulbs imported exclusively for propagating purposes," it had in mind the use of the bulbs and not the business of the importer; and so the fact that bulbs fit only for such purpose were sold, and not used, by the importer would not prevent their falling within the proviso.

4. ORCHID PLANTS, HOW CLASSIFIABLE—"MATURE MOTHER FLOWERING BULBS."

Orchid plants, known as Cattleyas, which at the time of importation had already flowered, would never flower again, and were useful for no commercial purpose except propagating, and which, although not true bulbs, were known to the trade as orchid bulbs, were entitled to free entry under the proviso to paragraph 210, tariff act of 1913, as mature mother flowering bulbs imported exclusively for propagating purposes.—Maltus & Ware *v.* United States (6 Ct. Cust. Appls., 376; T. D. 35920).

---

United States Court of Customs Appeals, December 4, 1916.

APPEAL from Board of United States General Appraisers, Abstract 39618.

[Reversed.]

*Allan R. Brown* for appellants.

*Bert Hanson*, Assistant Attorney General (*John J. Mulvaney*, special attorney, of counsel), for the United States.

[Oral argument October 26, 1916, by Mr. Brown and Mr. Hanson.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Orchid plants bearing the name Cattleyas were classified by the collector of customs at the port of New York as orchids and assessed for duty at 25 per cent ad valorem under the provisions of paragraph 210 of the tariff act of 1913, which paragraph is as follows:

210. Orchids, palms, azalea indica, and cut flowers, preserved or fresh, 25 per centum ad valorem; lily of the valley pips, tulips, narcissus, begonia, and gloxinia bulbs, $1 per thousand; hyacinth bulbs, astilbe, dielytra, and lily of the valley clumps, $2.50 per thousand; lily bulbs and calla bulbs or corms, $5 per thousand; herbaceous peony, Iris Kaempferri or Germanica, canna, dahlia, and amaryllis bulbs, $10 per thousand; all other bulbs, roots, root stocks, corms, and tubers, which are cultivated for their flowers or foliage, 50 cents per thousand: *Provided*, That all mature mother flowering bulbs imported exclusively for propagating purposes shall be admitted free of duty.

The importers claimed that the goods were wild orchid bulbs and that they were free of duty under the proviso to the paragraph cited.

The Board of General Appraisers overruled the protest and the importers appealed.

In Maltus & Ware *v.* United States (6 Ct. Cust. Appls., 376; T. D. 35920) we passed upon merchandise identical with that here involved, and the evidence and issues upon which we there reached a conclusion are, we think, again submitted for our consideration by the present appeal. However, inasmuch as the learned Assistant Attorney General very earnestly urges that this court erred in its original decision, we prefer to review the instant record on its merits without taking into consideration our previous holding. A review of the matter *de novo* will afford the opportunity of correcting any error which might have been committed and which otherwise might be perpetuated. Besides all that, such a review seems to be justified by the fact that the Government appears to have relied largely in the former case on the claim that the Cattleyas, as imported, were not true bulbs and not so insistently as now on the claim that the goods did not meet the other requirements of the proviso.

The testimony for the Government establishes without contradiction that botanists do not recognize the goods imported as true bulbs, but as pseudo or false bulbs, and consequently the first question to be

determined is whether the proviso to paragraph 210 is broad enough to cover plant growths which, though not true bulbs, botanically speaking, are nevertheless either popularly or commercially designated as bulbs. We think it is. The enacting clause of paragraph 210 in terms provides for begonia, Iris Kaempferri, canna, and dahlia bulbs, and as it very clearly appears from the testimony of the botanists Nash and Rusby that such types of plant life are not true bulbs, it follows that the enacting clause at least was not limited in its operation by Congress to true bulbs. As there is nothing which would justify us in saying that the word "bulbs" in the proviso was used in any other sense than that which obtained in the enacting clause, we must conclude that the proviso is not limited to true bulbs.

The next proposition which presents itself is whether the goods in controversy are commercially known as bulbs, and as to that we are decidedly of opinion that the evidence establishes without contradiction that they are so known.

On the use of the word "bulb" in the trade the witness George L. Freeman testified on behalf of the importers as follows:

Q. (By Mr. Brown): How long have you been dealing in this country at wholesale?—A. I have been treating directly with the trade since 1905.

*       *       *       *       *       *       *

Q. Your business is throughout this country, I understand you to say?—A. Extends all over the country; in every State, practically.

Q. How long has that been true?—A. Every State has not been true until 1909 I began shipping those.

Q. Was it true at and immediately prior to the passage of the present tariff act of October 3, 1913?—A. Oh, yes.

Q. At that time please state how these articles Exhibit 1 were known in trade and dealt in.—A. At that particular time?

Q. In the summer of 1913, before October 3?—A. These were known as orchid bulb stock, imported for propagating purposes, largely among commercial people and to a certain extent among private people, but private people are only interested in an established bulb that they may see so as to know what they will be. We do not know exactly what this may develop. It may develop a perfect flower, or a flower not exactly as nice a color as some. There may be many of these bulbs that after they are developed are thrown away on account of their imperfectness.

Q. How are they sold—by the dozen, or pound, or case, or what?—A. These are sold by the dozen, by the case, and by the hundred, and they represented about the number of bulbs in a cluster which we have adopted in this country in this way—3 to 5 bulbs to a cluster, 8 to 10, 9 to 15, and so on.

Q. The case will be sold as containing so many bulbs on a plant?—A. The case represents so many bulbs or a quantity of good bulbs. For instance, for 400 bulbs we ship out to the grower 400 bulbs after we have trimmed off all the imperfect ones.

Q. The bulb, then, is used as the unit in selling?—A. That is the unit in selling.

Q. Is that word "bulb" you have used used in the trade?—A. It has been used in the trade since I have been acquainted with it, always, without excep-

tion. There is no other expression used in regard to these plants, these importations, rough irregular stock, no other expression.

Q. That is true in different parts of the country?—A. All the same all over.

On cross-examination the witness Freeman testified in part as follows:

Q. When you speak of calling that portion of the plant that you have referred to as a bulb a bulb, do you do that only in a commercial sense?—A. Speaking of the bulbs? We have to sell these plants as bulbs. They are spoken of mainly in the trade as bulbs. There is nothing else that describes that pieced plant or the whole plant or whatever it may be; there is no describing it except bulbs.

Q. (By Judge WAITE.) What is it, bulb or bulbs?—A. Each one is a bulb.

Q. Sell them by the hundred?—A. Sell them by the hundred as a case, by the case.

Q. (By Mr. ISENSCHMID.) You say you can not call them by any other name. What is the objection to calling that a plant?—A. Of course it is a plant; a plant consists of 2 bulbs, 4 bulbs, 6 bulbs, 10 bulbs plant; 100-bulb plant if you choose.

Q. You contend they are all plants, not bulbs?—A. All these have bulbs we are talking about.

## John E. Lager, on behalf of the importers, testified as follows:

Q. (By Mr. BROWN.) What is your business?—A. Orchids.

Q. How long have you been in that business?—A. Since 1896.

Q. What has been your experience in the business; buying, selling, collecting, growing, or what?—A. I was collecting previous for five years in South America.

Q. Since 1896 what have you been doing?—A. Growing and selling orchids; nothing else.

\*         \*         \*         \*         \*         \*         \*

Q. Now, you say you have dealt in these goods in the United States since 1896?—A. Yes.

Q. At wholesale?—A. Both wholesale and retail.

Q. In this section of the country or throughout the United States?—A. All over the country and occasionally abroad.

Q. During that time have you found that the term "bulb" is used in connection with these goods?—A. As far as I remember we never designate them as anything else.

Q. (By Judge WAITE.) He is referring to the trade now?—A. Yes; we quote them at so much a case, so many bulbs, case of 400 bulbs or plants with six or eight bulbs.

## Cross-examination:

Q. This part they refer to as a bulb, do you know whether they are called botanically a bulb, or do you only refer to it in a business or commercial way?—A. No; that occurs in the works on orchids, if I am not mistaken. I don't know of any other designation, because that is the way everybody I ever heard would speak of Cattleyas or other orchids; they all would say bulbs. There is no other word that I know of.

## Louis F. Carrillo, on behalf of the importers, testified as follows:

Q. Look at Exhibit 1 there—do you recognize what that is?—A. That is a Cattleya.

Q. Where does that come from?—A. South America; Colombia.

\*          \*          \*          \*          \*          \*          \*

Q. You stated that a portion of those consisted of bulbs. What is the portion which you call bulbs?—A. The bulb is the thick portion.

Q. Where do you get that name?—A. From general use by everybody I have ever met who knows anything about this business.

Q. How long have you dealt in the article?—A. Ten years.

Q. Do you sell them in that condition?—A. Sell in that condition and buy, too.

Q. Throughout the country?—A. Throughout the country.

Q. How are they sold—by the dozen, or, what is the unit?—A. As a rule, I sell them by the bulb. So many cases so many bulbs.

Q. Is that the word which is used in describing the article commercially?—A. That is the word used by everybody who buys such orchids.

Q. How long has that been in existence?—A. Sixteen years now.

Q. Without any variation?—A. Without any variation.

This testimony, we think, warranted a finding in the original case and warrants a finding in this case that the goods must be regarded for tariff purposes as bulbs irrespective of whether they are in fact botanically bulbs or popularly known as bulbs.

The fact that they are bulbs, however, is not enough to bring them within the proviso to paragraph 210. In addition, they must be flowering bulbs, mother bulbs, mature bulbs, and bulbs imported exclusively for propagating purposes.

There is no evidence showing or tending to show that the terms "mature," "flowering," or "mother" had any special commercial signification, and we must regard them as expressions of description to which must be given the common, popular meaning ascribed to them when applied to plants. Commonly and popularly speaking, the term "mature" means fully developed, and a mature bulb would therefore signify a bulb which has reached its full development. A mother bulb is one which is the progenitrix of other bulbs, a bulb which has so far advanced that the principal function left for it to perform is that of producing other bulbs like itself. That the botanist uses the expression "mother bulb" in the same sense as that which would be popularly assigned to it is apparent from the testimony of the Government witnesses Rusby and Nash. Rusby testified that mother bulbs are bulbs which produce other bulbs known as daughter bulbs. He said that the mother bulb is consumed in the process of developing its flower and sending out daughter bulbs. Nash stated that the mother bulb produces leaves and sometimes flowers, and when that is done it throws out little bulbs and thus gets its name mother bulb. When the mother bulb has completed its life history it dies, and the process is continued in the smaller bulbs which it has made.

As commonly used, flowering bulbs may signify either bulbs in flower or bulbs which at some stage of their plant development will produce flowers. In view of the fact, however, that the proviso is

limited to mother bulbs and to bulbs imported exclusively for propa-
gating purposes, we think the term "flowering bulbs" as therein
used must be interpreted to mean not bulbs in flower but bulbs
which, though they will not flower themselves, are nevertheless
capable of producing other bulbs which will flower.

From all of this we conclude that a mature mother flowering bulb
is a bulb which has reached its full development and has no other
function to perform save that of throwing out other bulbs which
under normal conditions will flower and in their turn develop
daughter bulbs.

We now come to the consideration of whether the merchandise
imported and commercially known as bulbs falls within the de-
scriptive terms of the proviso; that is to say, Are the bulbs mature?
Are they flowering bulbs? Are they mother bulbs? Three wit-
nesses—Freeman, Lager, and Carrillo—were called for the importers
and gave testimony as to the nature, condition, and character of
the bulbs and the purpose for which they were imported.

Freeman testified as follows:

Q. State further as to the condition of this article, Exhibit 1, at the present
time—that is, as to those bulbs which we see here. Have they flowered yet or
what is their condition?—A. These bulbs, some of them, have flowered; some
have not. Those that have will never flower again, but each of them will pro-
duce a bulb if rightly established that will·flower. *These bulbs will never
flower again under any circumstances.*

\*      \*      \*      \*      \*      \*      \*

Q. (By Mr. Isenschmid.) Can you tell me what is known as a flowering
bulb?—A. A flowering bulb is a new shoot that produces a flower.

Q. Direct?—A. Direct; yes. These bulbs are not flowering bulbs; they have
flowered.

Q. Are flowering bulbs ever imported from South America?—A. *These are
flowering bulbs that have been imported from South America for the purpose
of growing bulbs that will flower again.*

Q. Then do you call those flowering bulbs?—A. We do not designate them
as flowering bulbs; we designate them as strong, well-developed bulbs.

Q. Are flowering bulbs ever imported from South America from this locality—
flowering orchid bulbs?—A. *Flowering orchid bulbs—never that I know of.*

Q. Are orchids as imported ready for flowering—do flowers come from new
shoots?—A. Flowers come from new shoots; yes.

Q. Not direct from the flowering bulb?—A. Not direct from the old bulbs.

Q. (By Judge Waite.) I understood you to say you did not bring those in—
bulbs (which) are ready to flower?—A. *No; we do not bring in any bulb that
is ready to flower.*

Q. (By Mr. Isenschmid.) If that be true can any of the orchids as im-
ported be called flowering bulbs?—A. *These bulbs that we bring in from South
America will not flower; never would.* Of course they might at rare exceptions,
like in a thousand plants you might get one plant that will flower, but they are
brought in for the purpose of growing bulbs that will flower.

\*      \*      \*      \*      \*      \*      \*

Q. *You gather them after they have matured and flowered?*—A. Yes.

Q. There is no bulb growing then?—A. There is no bulb growing then. *We gather them after they have matured and flowered.*

It will be noted that this witness uses the term flowering bulbs in the sense of bulbs in flower and also in the sense of bulbs which are capable of producing flowers.

Lager testified as follows:

Q. Can you state what the Exhibit 1 is, what condition it is in?—A. This is what we call the Cattleya plant. The mother bulbs are these. *They have flowered—they are matured*—without which we can not get any new leads. New leads are very slow coming out, and they must come from an old bulb that has already matured.

Q. The new leads you speak of come from the base of the bulb out of the roots?—A. Yes. In that plant there—Exhibit B—it is more advanced.

Q. Now, for what is that article Exhibit 1 used?—A. It is grown for flowers.

Q. Will that produce flowers?—A. The new shoots. *The plant itself is absolutely valueless. As long as that plant remains in that state it has no value whatever until it produces these new shoots, from which we get a new bulb and consequently flowers.* These other bulbs are probably put there to sustain the plant in times of stress—drought, etc.—and these bulbs will sometimes sustain the life of the plant. That is the only purpose they serve. Then sometimes one mother bulb or plant will produce two of these shoots—one on each side of it. The plant is, of course, no good to us whatever unless we can propagate it and produce new shoots, and then from the new shoots we get flowers.

Cross-examination:

Q. Do you agree with the statement of the former witness that the bulb as referred to, without the leaf growing out of the top of it, can be used for the purpose of propagating?—A. Yes, I do. That is, under certain conditions; if the man has patience and nothing to do. We do it. We probably have several hundred hung up. We forget all about them, and after a few years they make a plant.

The witness Carillo testified as follows:

Q. Look at the Exhibit 1 there. Do you recognize what that is?—A. That is a Cattleya.

```
*        *        *        *        *        *        *
```

Q. Can you tell whether those bulbs have flowered or not?—A. Yes, sir.

Q. Have they?—A. No, sir; they have not.

Q. What?—A. No, they have not. The old bulbs have flowered, but the young bulbs have not.

Q. Which are the young bulbs?—A. These with the leaves.

Q. Will the old bulbs flower?—A. No; they will never flower again.

```
*        *        *        *        *        *        *
```

Q. Do you know what use that exhibit is put to? You say it is known as bulbs. Will it flower again?—A. No. That plant has to be propagated in order to form new bulbs—new flowering bulbs.

Q. Is there any other use for it practically or commercially?—A. No, not that I know of. To produce new bulbs for flowers.

That testimony was not impeached, and if fairly construed establishes, we think, that the bulbs imported were not in flower; that

they had flowered prior to importation; that they would not flower again; and that they had no important function to perform other than that of producing new bulbs which would flower as they themselves had done. We must therefore hold that the bulbs at the time of importation were mature mother flowering bulbs within the meaning of the proviso to paragraph 210.

The board, in its decision overruling the protest, held that the goods were not imported exclusively for propagating purposes. We construe that finding to mean that the merchandise was not imported for the exclusive purpose of multiplying, spreading, or continuing, by natural or other means, the breed, variety, or species of bulb imported. (See "Propagate," Standard Dictionary.) Putting that construction upon the finding, we think that it was not sustained by the evidence. The testimony of the importers was uncontradicted that the Cattleyas in issue were, when imported, valueless for any purpose other than that of generating new bulbs which would flower, and from that it would follow that they must have been imported exclusively for propagating purposes. Of course, in the sense that the goods were imported to be sold for the purposes of propagation, it might be said that they were not imported exclusively for propagating purposes, inasmuch as they were imported for *sale* as well as propagation. We do not think, however, that any such conclusion as that is warranted by the language of the proviso under discussion. The proviso on its face was evidently intended to encourage the propagation of certain classes of bulbs rather than to favor certain classes of importers; and certainly that intention could scarcely be brought to a practical realization by admitting free of duty bulbs when imported by persons intending to propagate them and excluding from free entry the very same class of bulbs when imported to be sold for propagation. In our opinion, when Congress limited the proviso to bulbs imported exclusively for propagating purposes, it had in mind the use of the bulbs and not the business of the importer.

We hold, first, that the goods are bulbs, because they are commercially so known and designated; second, that they are mature bulbs, because they are fully developed; third, that they are flowering bulbs, because they belong to that class of bulb which is capable of producing flowers; fourth, that they are mother bulbs, because they are capable of producing and do produce other bulbs like themselves which will flower; fifth, that they are imported exclusively for propagating purposes, because they are imported for the purpose of propagating bulbs which will flower, and are absolutely valueless for any other use.

The decision of the Board of General Appraisers is *reversed.*

CONCURRING OPINION.

MONTGOMERY, Presiding Judge: While concurring fully in the reasoning of the main opinion, I think the decision might be, and in furtherance of orderly procedure should be, rested upon the doctrine of *res adjudicata* as to Maltus & Ware and on the doctrine of *stare decisis* as to the other.